People v Johnson (2020 NY Slip Op 02589)





People v Johnson


2020 NY Slip Op 02589


Decided on May 1, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 1, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., TROUTMAN, WINSLOW, BANNISTER, AND DEJOSEPH, JJ.


541 KA 18-02296

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
PATRICK C. JOHNSON, DEFENDANT-APPELLANT.






DANIELLE C. WILD, ROCHESTER, FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered July 9, 2018. The judgment convicted defendant, upon a plea of guilty, of criminal possession of a controlled substance in the third degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, that part of defendant's omnibus motion seeking to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him, upon his plea of guilty, of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [3]), defendant contends that Supreme Court erred in refusing to suppress physical evidence obtained from his vehicle following a traffic stop. We agree.
A deputy on patrol observed a vehicle turning left without its turn signal activated. The deputy followed the vehicle and turned on his emergency lights to initiate a traffic stop. A short time later, the vehicle pulled into a residential driveway, and the deputy pulled up behind the vehicle. After the vehicle stopped, defendant, the only occupant of the vehicle, exited through the driver's door. The deputy directed defendant to get back inside the vehicle and approached the vehicle. He then directed defendant to lower the window, but defendant told him that he could not do so because the window was broken. The deputy directed defendant to unlock the driver's door, and defendant again said he could not do so. The deputy observed defendant "blading" his body away from the deputy and making "furtive movements" toward the center console. The deputy did not see any drugs, weapons, "or anything" in plain view while defendant was making blading gestures in the vehicle. Defendant offered to move to the passenger side of the vehicle, and the deputy directed defendant to stay where he was. Defendant, however, moved to the passenger side of the vehicle, opened the passenger door, and fled. 
A foot chase ensued through multiple yards and over fences. The deputy eventually caught up to defendant and took him into custody. Defendant was arrested for obstructing governmental administration and resisting arrest. When asked why he ran, defendant responded that there was a warrant for his arrest. The deputy thereafter returned to defendant's vehicle. He opened the front passenger door and smelled the odor of marihuana, which he recognized from his training and experience. The deputy also observed empty baggies in the center console, which he recognized as the type of baggies commonly used for drugs. Under the armrest in the vehicle, the deputy observed baggies containing a substance that appeared to be crack cocaine. At that time, the deputy stopped searching the vehicle and applied for a search warrant, which was subsequently issued and executed. In addition to cocaine, the deputy seized a semiautomatic [*2]handgun from the glove compartment of the vehicle.
Defendant sought to suppress the physical evidence obtained from his vehicle on the ground that the deputy lacked probable cause to open the front passenger door and search the vehicle. The court refused to suppress that evidence, reasoning that defendant's behavior after the traffic stop was sufficient to establish probable cause for a warrantless search of the vehicle under the automobile exception. We agree with defendant that the deputy lacked probable cause to open the door to the vehicle and search the vehicle prior to obtaining a search warrant.
Under the Fourth Amendment of the United States Constitution, "a search conducted without a warrant issued by an impartial Magistrate is per se unreasonable unless one of the established exceptions applies" (People v Galak, 81 NY2d 463, 466-467 [1993]). "One such exception is the so-called automobile exception', under which State actors may search a vehicle without a warrant when they have probable cause to believe that evidence or contraband will be found there" (id. at 467). Applying our State Constitution, the Court of Appeals has held that when police want to search a vehicle at the time they arrest its occupant, "the police must not only have probable cause to search the vehicle but . . . there must also be a nexus between the arrest and the probable cause to search" (id., citing People v Blasich, 73 NY2d 673, 680 [1989]). "[T]he requirement of a connection" between "the probable cause to search and the crime for which the arrest is being made" is "flexible" inasmuch as a court need not focus "solely on the crimes for which a defendant was formally arrested" (id. at 467 [internal quotation marks omitted]). "[T]he proper inquiry . . . is simply whether the circumstances gave the officer probable cause to search the vehicle" (id. [internal quotation marks omitted]). When police officers stop a vehicle, they may have probable cause to search the vehicle under the automobile exception based "on grounds other than those that initially prompted [the officers] to stop the vehicle," i.e., the probable cause may come to light after the stop (id. at 467-468; see Blasich, 73 NY2d at 681; People v Ellis, 62 NY2d 393, 396-397 [1984]).
Here, we cannot say that the overall circumstances—including defendant's blading gestures, furtive movements toward the center console, refusal to comply with the deputy's directives, and actions in running away from the vehicle—provided probable cause to justify a warrantless search for evidence or contraband under the automobile exception. Although defendant engaged in "furtive and suspicious activity" and his "pattern of behavior, viewed as a whole" was suspicious (People v Parson, 77 AD3d 524, 524-525 [1st Dept 2010], lv denied 16 NY3d 799 [2011]), there was no direct nexus between the initial traffic stop for a traffic violation and the search of defendant's vehicle. Furthermore, there was no direct nexus between the arrest of defendant and the search of his vehicle. Defendant made no statements to suggest that the vehicle contained contraband or evidence of a crime (cf. Galak, 81 NY2d at 467-468), the deputy did not observe any contraband in plain view (cf. Blasich, 73 NY2d at 681), the deputy did not find any contraband on defendant's person when he took defendant into custody (cf. Ellis, 62 NY2d at 396-397), and it cannot be said that defendant's "furtive movements" toward the center console lacked any innocent explanation or occurred under circumstances suggesting that criminal activity was afoot (see People v Pastore, 175 AD3d 1827, 1828 [4th Dept 2019]; People v Guzman, 153 AD2d 320, 323 [4th Dept 1990]; cf. People v Nichols, 175 AD3d 1117, 1118-1119 [4th Dept 2019], lv denied 34 NY3d 1018 [2019]). Inasmuch as the deputy did not smell the odor of marihuana until after he opened the door, we conclude that all physical evidence obtained as a result of the illegal search must be suppressed as fruit of the poisonous tree (cf. People v Cuffie, 109 AD3d 1200, 1200-1201 [4th Dept 2013], lv denied 22 NY3d 1087 [2014]).
Entered: May 1, 2020
Mark W. Bennett
Clerk of the Court